understand all parties are here so I will turn to the first case on our calendar United States of America v. Westchester County morning your honors may it please the court my name my name is Robert me and attorney for the findings of the court below in two respects first that the county has complied with paragraph 33 3c of the agreement and that the court improperly excluded evidence of that compliance and to the compliance I didn't see any in the record rather the exclusion of the evidence was the various activities that the county undertook beginning in the latest 2011 the activities of Norman Drummond who went out and went to many events and public fora and training sessions we hired consultants our other employee who went out was Mark Fang who been successful in changing public opinion in Westchester County well that's very difficult to determine your honor but there's no doubt that the county has throughout these years promoted fair housing as well that's not entirely true you signed a consent order requiring you to do so but did you actually promote fair housing absolutely your honor there's a myriad of activities including the contracts including the activities of both Norman Drummond Mark Fang others even the county executive appeared at housing expos went to ribbon cuttings it was always promoting fair and affordable housing the county executive that refused to do what his predecessor had agreed to set the same county executive with a county executive had since 2010 your honor yes and and the statements which the court below criticized wouldn't had nothing to do with paragraph 33 C they related to another dispute a public policy dispute which this court is aware of because we've been here before on that issue of the of the AI and the zoning issues and whether or not zoning code should be changed that is a public policy issue which the county executive expressed his opinion has nothing to do with he's always promoted fair and affordable housing said that diversity is something that the county promotes and in fact the county is one of the most diverse counties in the state of New York he says that constantly he also says constantly diverse but segregated isn't it well I wouldn't say that there's some people would hold that view they're all white suburbs and all black suburbs in Westchester County no there's a mixture there is some there are statistics that show that some some of the communities have less than 3% black population but now the issue is what's causing that and and the discussion is whether or not zoning is causing that and that's a public forum a public discussion public debate which the the county executive weighed in on but it has nothing to do with promoting fair and affordable housing it doesn't implicate the he's not against the settlement from the point of that he said over and over again he's going to make sure we that the county complies with the the settlement but the debate of whether or not zoning laws should be changed is is something that is in the public forum for men and that the government in fact is looking to remedy here is designed to punish or to correct the statements of the county executive but that gets into the substance of the statements on the very issue of a public debate on a public policy the public policy is whether or not to change zoning codes to promote affordable housing that that is not in the which is described for me and maybe you can maybe you can't the activities that you would characterize as part of a campaign that were specifically required by paragraph 33 C that were not previously required under the decree so prior to the decree you weren't required to do anything and then after the decree as a result of paragraph 33 C you had an obligation right what are those activities that miss Drummond and miss mr. Fang and others on behalf of the county participated in that were as a result of paragraph 33 C there were a myriad of things they did out and they spoke to municipal officials they might not spoke were they not doing that before the decree well certainly the county has always been a promoter of affordable housing but all the activities that they engage in now is specific there's a large degree specifically geared towards the 750 is it your contention that the county could have simply continued whatever activities that had undertaken prior to the decree in order to fully satisfy paragraph 33 C I don't think that that disqualifies that because okay so what what in addition to what it had already previously done prior to the decree did it do to satisfy its obligation under section 30 among other things besides the activities of miss Drummond and mr. Fang going forward and meeting all this group we hired contractors of Pace University Housing Action Council to have public forums public events and promoting diversity we also did in 2011 the poster campaign or poster initiative which yes a focus group didn't like the ones that were created by the county the county's staff created those posters they didn't like them but nevertheless the county went forward with the poster campaign and made sure those posters they use ones from why did it take two years actually I think the activity started earlier than that okay the activities but you're but the poster campaign you just told me was 2011 2011 that they because they were working on posters and and monitor actually reviewed the posters and then we had a focus group look at the posters and they didn't like them so then in 2012 we switched to the HUD posters and so that was part of a campaign a series of things that the county did can he did many things besides miss Drummond mr. Fang and is it your contention do you have anything more I'm sorry no is it your contention that mr. Astorino's that it was wrong for the district court to consider mr. Astorino's statements yes because they had nothing to do a paragraph 33 C and those statements had to do with another issue which was litigated and and has to do with the zoning which the court called zoning reform there's nothing in the stipulation to say that zoning reform is part of the stipulation we look at the terms of stipulation if you if you would you agree that if the statements made by Astorino could fairly by mr. Astorino as county executive could fairly be viewed you may disagree with this part of this characterization but could fairly be viewed as trying to undermine the decree that would be a problem for you I just screwed that he wasn't doing that at all no no no no if hypothetically if you agreed with me that mr. Astorino's statements could fairly be viewed as an attempt to undermine the decree generally not to decree general I would say that his if statements and this was we're not trying to define the outer limits of the statements but the statements here exact said this is what the decree says 750 units he was reacting to what HUD was saying that in fact this is study out there that you have to have 10,000 units the monitor actually said that in letters to the I understand but my question is a little different and just go with me on the hypothetical mr. Meehan if you can if you can't then that's also telling would you agree with me that if mr. Astorino's statements could fairly be viewed as trying to generally undermine the public's confidence in the consent decree that that might be a violation no I wouldn't think that would be here yes if it related to a specific term of the settlement but not the general undermining of the consent decree because there is no purpose we're not asking you or at least as I'm listening to judge lawyers question whether you think his statements did do that the question was if they could be perceived as doing that that is except that they are somebody could look listen to them read them and say he's undermining the decree would you say that that's a problem if it was undermined some specific term of the oh it has to be specific term by term not the decree generally well the decree of the settlement let's say the settlement generally people could disagree whether or not the county should have entered it yes but the decree required certain affirmative actions right right and if what he's doing hypothetically is undermining the execution of those affirmative actions is that a violation of the decree in your view if the public official is undermining the consent decree entered by the court that the county agreed to and is perceived as doing that is that a violation of the decree that that is a slope that we're talking about consent decrees and the purpose of a consent decree and institutional reform litigation the very narrowly determined because it is a an area where the Supreme Court has said this is an area of caution especially when you're talking about public debate and speech I don't think there's any case where all right that's the whole you mentioned the slope let's go down the slope if Mr. Astorino I'm just trying to figure out where where the line is that you are trying to ask or asking us to draw Mr. Astorino had said I do not believe in this consent decree and I don't support it would that be a problem for you well there's two different things first of all he can argue and he did argue certainly before the election that it was not a wise thing for the county to settle on those terms after the after he was elected and then he said I didn't agree with the settlement but going forward it's my obligation and as a matter of law that we respect the rule of law and then we're going to enforce this consent decree and we were going to execute the consent decree as written that's exactly what he said you say in public meetings that HUD wants to dismantle local zoning he did and and that was based upon HUD statements in public and his statements of HUD saying wait a minute you you have to consider the Berenson case and 10,000 units and tie this into your AI because and so the county executive said wait a minute that's not what the consent decree says the consent decree says we're going to build 750 units the consent decree says we can go out and support and diversity and fair housing and and the distribution within all the communities all those things he said were correct but when HUD and the monitors said oh no wait a minute we have to look at Berenson we have to tie in this 10,000 unit number he objected he said that's not in the settlement the things that when he spoke publicly he had to chart showing that this is what the settlement says and this is what HUD said and he was defending the settlement the terms of the settlement saying this is what it says so he was reacting to HUD and and they were misconstruing the settlement what all right counsel I've got one more question on this man would you I'm trying to figure out what you understand by the term campaign and I take it that you would you agree it's a public campaign that was required by 33 C yes and I would say campaign and I think the court below narrowly construed the word campaign and the court that's a question of law and campaigns is a series of events that leads to an object whether it be a military campaign or a political campaign and there are numbers in this case was it your position that the campaign has got to be campaign geared towards the public the public and others I think that yeah but the public the public is included in that public education is part of it but is also educating promoting the diversity or the acceptance by various communities of the distribution of affordable housing you go to the municipal officials they're the ones who make decisions so that was all part of it and we also had public forums yes to promote because public comes out and speaks at these forums at public hearings so it was a many faceted attempt to broaden the sport for fair housing all right your time has long expired you have two minutes for a battle we'll hear from the government good morning your honors and may it please the court my name is David Kennedy I'm an assistant United States attorney in the Southern District of New York and I represent the United States in this case the district court correctly found that the county through its executive breached paragraph 33 C of the consent decree in this case the county was required to and I quote create and fund campaigns to broaden support for fair housing and promote the fair and equitable distribution of affordable housing in all communities instead the county embarked on a campaign that got terrible reviews and then abandoned it and then the county executive repeatedly made misrepresentations about the county's obligation under the consent decree in order to undermine these goals also can I interrupt and ask you about the relief that the district court ordered the relief appears to be to make public Mr. Estorino's depositions is that correct that is correct yes and what does this relief accomplish when it seems to me that the public probably agrees with them the public in Westchester County which has been resistant the public is entitled to reach its own conclusions and I think the district court's remedy evinced a confidence that the public when fully informed of all the facts and circumstances will reach the correct judgment and I think the release of the videotape shows that because you know having looked at it any time Estorino is pressed on the substance of his misrepresentations that HUD wants to abolish local zoning that high rises can be built on any block that HUD is demanding 10,000 units at a cost of 1 billion dollars you can see him grasping and you can see him failing to provide a coherent response to the questions and I think that's a good tonic to the sorts of statements that Mr. Estorino has put out there that when actually put under oath and subject to the truth-finding process of a deposition that Mr. Estorino was unable to support his statements so that I think is why the district remedy was so appropriate here in essence that the government requested among the remedies that we request in essence the the remedy for speech is more speech and that's what the district court did here and so just to move on through the substance of the violation of paragraph 33c Mr. Meehan has already alluded to the fact that a poster campaign was started by the county now the county knows how to do public information campaigns both us and the district court pointed out they have uh campaigns called westchester smart about improving technology in the county and also safer communities following the tragic events in newtown what what could the what could the county executive and others um on behalf of the county have done to critique hud and to critique the other actors the monitor and so on without running afoul of um paragraph 33c I think the the line is drawn at the point that Mr. Estorino is making false statements um Mr. Estorino was obviously entitled to his viewpoint but he is under a contractual obligation to promote uh campaigns to support fair and affordable housing you made false statements that furthered the goals I mean just well that that would have been problematic exaggerated but you you wouldn't be here so it's not false statements that's the line well in this case it's false statements that cause a breach of the contract in essence this is a contract case and if he were under an obligation for example the state of new york were giving him money uh to promote tourism in westchester which is part of new york state and instead Estorino went around saying actually westchester is not all that interesting go to jersey instead those statements would be evidence of the breach those statements would be evidence that he's not fully committed to furthering the goals of the campaign that he was of course no one would say that no one would say that your honor having grown up in westchester county um but you know to to make the flip side of the point yeah we probably would not be here uh if for example to use the analogy Mr. Estorino said westchester county is the most beautiful county in the united states or that if perhaps he exaggerated to some degree the the benefits of the settlement the question here is when you're making false statements to the public and false misrepresentations to the public there has to be some corrective to that and just as in the course of litigation you have parties making statements that are inaccurate and they're making arguments that are inaccurate you subject them to depositions and then when the witness gets on the stand and testifies to something that's not true you impeach them with the deposition and that's sort of the same function that the release of the videotape does here now Mr. Meehan has talked a lot about all of the activities that um Ms. Drummond and other paragraph 33c and they really don't even if you look at the county's own brief uh and their definition of campaign as an organized course of action to arouse public opinion these activities don't do that um now there are a few that were um targeting public audiences yes there were a few that were better than others things like the affordable housing exposition which i believe is something that the county had been doing for years prior to the decree so that has a different problem with it excuse me i finish your sentence um it's going to be a long sentence so was there any measurement of whether uh the public opinion was changed they're actually doing that right now um in an aspect of judge coach ruling that the county did not challenge the county was ordered to hire a consultant and that consultant was named thompson and bender uh they put in a proposal for a survey uh and a budget for that survey and that we're going back and forth on that in the district now but the county did report to the district court in a letter filed i believe on december second just last week um that the county sorry that thompson and bender has done a survey and has gotten at least preliminary results from the survey we don't have that yet uh but as a result of doing that survey thompson bender is going to be crafting the public relations campaign that the county should have been doing all along the problem is it's 2017 and this settlement was executed in um if if you look at everything uh in her declaration again there are things like an affordable housing exposition where there is a general message to the public but again that was stuff that they were doing ahead of time um the first exhibit from page 1740 to 1769 in the joint appendix are housing commission meetings with a dozen to two dozen officials well again this was something they were doing already and secondly to the extent that there's any public message communicated by having a meeting with two dozen local officials that public message is purely incidental then on page 1787 there's a land use training institute seminar affordable housing is one of 12 issues then if you keep going on page 1804 uh drummond participated in the westchester 2025 round table um that round table mentioned would you would you even be here if um these were you know with all the pages that you've pointed us to uh were um in fact reflected some uh campaign but mr astrovino had remained silent it's a good question i think it's hard to say i think i think we probably would have felt that all of these meetings were enough no i think it were all these meetings where any sort of message to the public was purely incidental um i think we still would have said that that would have failed to uh equal public uh relations campaign the the the the amount of evidence that certainly pushes this uh toward our side of the table are the misstatements that the county executive made in essence it's like finding uh his private emails where he says something like i've no intention of promoting this i have every intention of undermining it um because that's really what he did now to get to some of public policy discussions about a zoning issue that resulted in litigation um this is now my my seventh time here so i i think we've seen a lot of litigation already on these issues and the court will recall at no point during those cases was there any argument about 10 000 units at a cost of 1 billion dollars that didn't come up in that other litigation at all where does it come from 10 700 and something like that well 750 comes from the consent decree that's all that hud has ever asked and there's a letter um in the joint appendix uh from the deputy secretary of hud this is page 683 that hud has never said you should build 10 000 units so they they had a specific number 10 768 where did that come from that number comes from a study that was done by Rutgers several years ago talking about the general need for affordable housing in the county and what the monitor has said in talking to municipalities is you can use that as a data point right it's not an obligation under the consent decree it's a data point that is something you should consider for example and this is purely hypothetical if that housing allocation study said well of the unmet need for affordable housing something like 10 really needs to be in the thing to say although it's not binding that 10 of the 750 units should be in Hastings on Hudson it's all the monitor ever did and when Astorino started making these false statements both hud and the monitor it's a page 683 for hud and page 212 for the monitor put out letters saying we have never asked anybody to build 10 000 this problem was he tied or indexed that number to the obligations under the consent decree no i think a fair reading of what the monitor was doing his report cards was saying here are all of the issues that are facing you as a town no no but as as oh he being as you know yes yes i'm sorry i misunderstood him being asked yes is is that what Astorino then said was it's hud expanding the terms of the consent decree hud is now insisting so you would have no problem or you would have had no problem and i'm just again trying to figure out the positions of the parties because it's unclear to me uh if mr astorino had been more precise and said there is a there's a rutgers study that says in actuality um this is going to require 10 000 units uh sure i think if mr astorino had made correct statements all along we would have been much less likely to support this application and i think the high rise monitor would have been less likely to make it i'm sorry what about the high rises was hud demanding high rise no that's also entirely fictitious um and you know the reason you know not to ascribe any motives to the fellow but without getting into whatever motives the county executive may be saying they're going to put high rises you know on your block um is is a little loaded and whether it's something that the county executive knows he's playing with or not it's a very dangerous thing to suggest and i think your honor's opinion in the in the haney case talked about the use of language and whether it's intentional or not it is very loaded language and may be intended to rile people up so that they oppose the settlement which is exactly the question that i first started with thank you thank you thank you counsel mr man you've reserved two minutes for rebuttal yes your honor council for the government has used the term false statements misrepresentations four or five six times in his argument we wouldn't be here virtually i guess they're saying if a county executive had made correct statements but that's the problem what we're talking about is question it's enough false you may disagree public policy may be not desirable well to say the government was demanding 10 768 units it was not false your honor it was it's an argument that demand demand they're making it well it's saying a demand they're saying through paragraph 32 of the settlement that the county had to uh impose this uh 10 000 unit they didn't say they had to they didn't demand it what's not false about that what's not as an officer of the court what's not false about that because it's part of a debate of whether or not zoning code should be changed but they never demanded and they never said you had to well they've to me those two statements are false as you're characterizing them no they brought it up they were the ones who raised the issue they they said in letters to the county that this was was a need that we should have to pay attention to this number and then the monitor said it's actually part of the settlement he said it's an obligation under the settlement so this was a reaction to those two things and the county executive's position is simply that that's not part of the settlement the settlement doesn't say that and that's a debate that's a public policy debate to call a debate i'm sorry maybe i misread there's deposition testimony in which he acknowledged that he had nothing no facts to back up the statement because is that right is that right is that no he never said he had no facts to back up the statement they asked him whether this the settlement says this and he said yes the settlement says that 750 units does the settlement say 10,000 no the settlement does not say 10,000 because it didn't and that was his argument so his argument is not false it's an argument on public policy whether or not zoning code should be changed and the reason earlier said that the i thought he'd said that the settlement required 10,000 units he said hud was saying that he didn't say that he was saying no that's not true he said hud is now saying that it requires so he's countering what they were saying so and and the public policy debate is whether or not uh zoning code should be changed to accommodate uh affordable housing in in those kind of numbers that's that was part of the debate of whether or not um um that should be should be hud never required high-rise houses did they high-rise buildings not specifically not literally they didn't what his point was if you change zoning codes if you eliminate uh density requirements if he's in eliminate height requirements he doesn't make an example if you eliminate height requirements that means you can build it as high as you want zoning is restrictive and all he all the county executive was saying was when you eliminate these rules you can there's things that you can anticipate or expect that it was a debate why couldn't one height restriction be replaced with another one it could it could the height restriction might be two stories might be 10 stories but that that's the debate and that's the debate at a local level that what whether or not these zoning codes should be changed and there's no issue here about violation of federal law regarding the zoning codes that has not been alleged hasn't even been proven so we'll on the uh the remedy um are are most of these videotapes already out they are you're all right you're all right in transcript form written they're out uh in all forms because the stay was lifted but uh so this remedy has been affected but the problem with it answer that question well they're out there the stay is yes the if there was no stay on the remedy has been affected but the problem with the remedy is that it thrusts the court into a debate on public policy which from several reasons is undesirable first of all implicates the first amendment second puts the court in in these don't necessarily have first amendment rights that's an open question in this circuit we're not alleging that those cases we're always saying it's it's implicated and certainly in the consent decree cases and the cases regarding um are you making a specific first amendment claim no we're saying it's implicated we're saying what does that mean so the constitution is implicated it's in everything that we do public debate it's not just the speaker but are you making if you're not making a first amendment claim i think we're saying that on the on the balance finding a breach based on statements of a county executive of a consent decree implicates the first amendment it implicates when you say it implicate every it can't be done implicates is a big word so are you making an argument based on the first we're making an argument first amendment we're not a certain a specific are you saying that someone's first amendment rights have been violated publics because as as mr kennedy just said he wants he wants to control what being said he he said what did he say that well when he said well we'll use the depositions to prove his statements are false well why not and more speech we all want more speech so what's wrong with the county executive speech that's more speech because the county executive at least is this is what we're arguing about here the county executive is found to have been undermining a consent an official of the county the highest ranking official arguably or at least the mouthpiece for the county public official has been found to undermine the consent decree that the county agreed to enter into in order to solve the problem it's not undermining saying one thing all right we've this consent decree but and this is my characterization i know you won't admit to it and i'm not asking you to but we don't want to really follow that and we're going to do what we can to make sure we don't have to if he said that that would be one thing but he didn't say that what all he said was this gets back to our discussion doesn't it that we were having earlier and whether if he is perceived to be saying something like that whether that's a problem and i think that's something we have to figure out i won't speak but he never said anything such like that 33c says to broaden support for fair housing we've done that the county's done that through many actors not just the county executive county executive has done it as well all he was saying is that the promotion of or changing zoning codes and and the the hud wanting to change zoning codes and through incorporation through the ai of 10 000 more units was not within the settlement and that that's public policy thank you thank you i do have one more question um if the presider would let me so you were telling me that all of the videotapes have been released yes your honor is that is that correct from the government that's correct your honor they're available online i'm not going to have the right station but in bios one which is the local news site you have any idea of viewership thank you both for a lively argument